■ In the Matter of THERESA FLOOD, Petitioner, v NEW YORK STATE AND LOCAL EMPLOYEES' RETIREMENT SYSTEM, Respondent. [718 NYS2d 834] —Determination of the State Comptroller dated July 8, 1998, denying petitioner's application for accidental disability retirement (transferred to this Court by order of the Supreme Court, Bronx County [Joseph Giamboi, J.], entered November 23, 1999), unanimously annulled, on the law, without costs, and the matter remanded to respondent for additional hearings consistent with our ruling herein.

Petitioner, a teacher's assistant for more than 20 years at a school for the deaf, suffered an injury aboard a bus during a field trip in November 1990, falling on her right knee and twisting her left knee. The next day she went to the emergency room, complaining of pain in her left knee and ankle. An X-ray revealed calcification of the cruciate ligament in her left knee, but no evidence of a fracture. Petitioner continued to seek medical treatment for pain, and in September 1991 an MRI revealed a torn lateral meniscus of the left knee. In April 1992 petitioner underwent arthroscopic surgery to repair the damage, and in September 1993 she was diagnosed with a torn medial meniscus of the right knee. Her doctors attributed both these injuries to her fall in November 1990.

Petitioner stopped working in September 1993, a month after she submitted her application for accidental disability retirement benefits. The application was disapproved in July 1994, on a finding by the Comptroller that petitioner was not "incapacitated * * * as the natural and proximate result of an accident sustained in * * * service." Petitioner thereafter filed

a timely notice for hearing and redetermination. At the first hearing in May 1995, the issues were framed by the initial Hearing Officer as: (1) was there an accident; (2) is the applicant permanently incapacitated; (3) if so, is the incapacity a proximate result of the accident? When the proceedings were resumed in April 1996 before a newly designated Hearing Officer, respondent's attorney framed the issue as simply whether the applicant's disability was "the natural and proximate result of an accident sustained in * * * service." Indeed, the Hearing Officer, at continued hearings in June 1997, cut off any questioning on "incapacity" (citing lack of notice to the applicant on that point), and identified "causation" as the sole issue. However, in announcing his decision on March 11, 1998, the Hearing Officer, after acknowledging that the June 1997 hearings had been limited to the noticed issue of causation, nonetheless reversed himself, *sua sponte,* and held that all three questions (accident, incapacity and causation) were once again at issue. After a lengthy discussion of the evidence, the Hearing Officer concluded that petitioner had failed to establish a "permanent incapacity." That being the case, he felt relieved of the responsibility even to consider the issue of proximate cause.

The Hearing Officer cited testimony by respondent's medical expert that petitioner had no disability that would interfere with her functioning in a classroom setting. Of course, there is also evidence in the record that petitioner decided to retire in 1993 when she felt unable to continue under the pressure and strain of teaching deaf children. Some of those activities were conducted *outside* the classroom. The point is that petitioner never had an opportunity to pursue or challenge respondent's testimonial evidence because the issue at the hearing, as framed in the notice, was limited to the question of causation. If the issues are to be expanded to cover accident and incapacity as well, then the interests of fairness dictate that petitioner should have an opportunity to cross-examine the witness and present her own evidence in that respect.

Our decision renders petitioner's remaining arguments academic. Concur—Rosenberger, J. P., Wallach, Saxe, Buckley and Friedman, JJ.